**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOE HIGHTOWER,

Defendant-Appellant.

No. 03-1015

District of Colorado

(D.C. No. 02-CR-40-N)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

Joe Hightower was convicted by a jury and sentenced to a term of 319 months, plus 5 years' probation. He appeals both conviction and sentence. In a fifteen-count superseding indictment, he was charged with: 1) nine counts of possession with intent to distribute more than five grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; 2) one count of possession with intent to distribute an unspecified amount of a

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

mixture or substance containing a detectable amount of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; 3) two counts of possession with intent to distribute a substance and mixture containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; 4) one count of possession with intent to distribute more than 5 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; 5) one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and 6) one count of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

In the proceedings below, the charge of felon in possession of a firearm was severed from the remaining counts. Following his trial on the remaining counts, the jury acquitted Mr. Hightower on the methamphetamine count and the district court directed acquittal on the charge concerning using a firearm in furtherance of drug trafficking. After the jury returned a verdict of guilty on the remaining twelve counts, Mr. Hightower pled guilty to the count concerning firearm possession by a felon.

On appeal, Mr. Hightower challenges his conviction and sentence on four separate grounds: 1) that he was deprived of his due process right to a jury of his

peers because there were no African-Americans in the jury pool and the district court did not allow additional jury voir dire to determine possible bias against African-Americans;  2) that his due process rights were violated because he faced a longer sentence for a crack offense, which, he argues, disparately subjects African-Americans to harsher penalties;  3) that the district court erred in ruling that it did not have the authority to downwardly depart based upon a Sentencing Commission's Report to Congress regarding the disparate effect of sentencing guidelines for crack offenses on African-Americans; and 4) that the trial court should have given him a downward departure for sentencing entrapment because the agents who bought drugs from Hightower specifically asked to buy crack.

## Analysis

1. Jury Voir Dire and Right to Jury of Peers

Mr. Hightower contends that he was denied a trial by a jury of his peers and that alleged racial bias deprived him of this right.  During voir dire, Mr. Hightower's counsel made an oral objection that there were no African-Americans in the jury pool and later, when asked if he would like to exercise any peremptory challenges, he objected to the panel for "lack of diversity."  App. vol. 4, at 144.  He also noted that the court asked no questions regarding "ethnicity." *Id.*

Mr. Hightower concedes that he has no challenge here under *Batson v. Kentucky*, 476 U.S. 79 (1986). Appellant's Br. 11. Aside from his general complaint about lack of diversity among the venire, it seems from the briefs that Mr. Hightower wanted questioning regarding his contention that the public connects African-Americans and crack in a discriminatory manner and that the trial court should have asked additional questions to ferret out those with such preconceptions. Prior to voir dire proceedings, Mr. Hightower's counsel tendered the following questions:

1.　If you were a black man charged with federal criminal offenses, and you saw that no other black citizens were seated on the jury to determine your guilt or innocence, would you feel confident that you would receive a fair trial?

2.　What do you understand the term [sic] "crack" or "crack" cocaine to mean?

3.　What have you heard about "crack" or "crack cocaine"?

4.　Do you have any preconceived idea of whether any particular ethnic groups are associated with the use of "crack" or "crack cocaine"? What is that idea based upon?

5.　Do you believe that if a person charged with a crime or crimes has been previously convicted of a criminal offense, that he or she is more likely to have committed the more recently charged offenses?

6.　Do you believe that all of our drug laws are fairly written and fairly enforced? If not, why not?

7.　Would you assign more or less believability to a person who has committed a crime but has received leniency from law enforcement in exchange for their cooperation to assist in the investigation and prosecution of others?

8.　Would you assign more or less believability to a person who is being paid to assist law enforcement in the investigation and prosecution of others?

Doc. 97, App. vol. 1.

During voir dire, counsel for Mr. Hightower objected to the scope of questioning, saying to the court: "I would also note for the record there have been no questions on ethnicity." App. vol. 4, at 144. The district court responded: "And what question on ethnicity do you think I omitted?" *Id.* Counsel responded: "I think there should be several. I think I tendered one, which was the first question posed." *Id.* From this, we gather that Mr. Hightower's counsel was referring to the first of his proposed voir dire questions enumerated above. Following the exchange, the district court then asked the following question and made the following determination:

> Members of the jury panel, the defendant is an African American. And the question is, since there are no African Americans on the panel, do each of you, looking within yourselves, have any doubt whatsoever that you could fairly and impartially judge the facts in this case?
> Is there anybody who has a doubt about your ability to do that?
> (No response.)
> All right. That's all I'm going to ask.

*Id.* at 145.

"[T]he scope of voir dire examination is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion." *United States v. Madrigal*, 43 F.3d 1367, 1372 (10th Cir. 1994). The Supreme Court has "delineated the circumstances that mandate an inquiry into racial prejudice during voir dire. The Court held that a

district court must make such an inquiry 'only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might . . . influence[] the jury.'" *Id.* (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 191 (1981)). The Court in *Rosales-Lopez* found such an inquiry might be merited in cases involving violent crimes where the victim and defendant were of different races. *Rosales-Lopez*, 451 U.S. at 191-92. Here, there is no such showing and the district court asked a clear question regarding impartiality. Given the fact that the district court asked a specific question regarding racial bias, and noting an absence of evidence in the record suggesting otherwise, we find that there was no indication that racial or ethnic prejudice influenced the jury in any way. In fact, if the voir dire had focused on a "connection" between crack and African-Americans, it stands to reason that the defendant could make an argument that those very questions would have prejudiced the jury against him. As the Fourth Circuit has observed:

> to seek out generalized prejudices during the voir dire would quickly divert the trial's focus from the guilt or innocence of the defendant to peripheral factors, such as the defendant's race or religious beliefs, which are usually irrelevant to the merits of the case. The very process of exploring such factors would heighten their role in the decision making process and tend to subvert the court's express admonition to jurors to convict or acquit only on the evidence before them without partiality to any party.

*United States v. Barber*, 80 F.3d 964, 967-68 (4th Cir. 1996).  With this concern in mind, we cannot say that the district court abused its discretion by limiting voir dire on the topic.

2.      Due Process Violation Due to Higher Penalties for Crack Distribution

Although it is unclear from his brief whether Mr. Hightower is arguing that the evidentiary basis for his conviction violated due process, that the statutory sentencing enhancements for crack distribution violate due process, or that the Sentencing Guidelines enhancements for crack distribution violate due process, he advances some argument regarding each of these points.  The Fifth Amendment to the United States Constitution provides: "No person shall be . . . deprived of life, liberty, or property without due process of law . . . ."  U.S. Const. amend. V.  We review "de novo whether a violation of a defendant's due process rights occurred."  *United States v. Walters*, 269 F.3d 1207, 1215 (10th Cir. 2001).

Prior to trial, Mr. Hightower filed papers styled as a motion for a bill of particulars seeking the weight and chemical makeup of each of the substances that served as the basis for the cocaine charges against him, and a motion for discovery, to dismiss (due process) or, in the alternative to sentence under the guidelines for cocaine hydrochloride and request for an evidentiary hearing. Appellant's Br. 13-14.  The trial court denied these various motions, but did grant

Mr. Hightower permission to have his own expert examine the drugs at court expense.

In the proceeding below and before this Court, Mr. Hightower took exception to his conviction and sentence because the government's witnesses testified that crack was present in the substances that formed the basis for his convictions for possession with intent to distribute of crack, but did not quantify the ratio between crack and cocaine hydrochloride. Such quantification is not required by statute. All that the statute requires is a "detectable amount" of the prohibited substances to be in violation, and, for the crack enhancement to apply, all that is required is that the substance or mixture contain cocaine hydrochloride and crack. See 21 U.S.C § 841(b)(1)(A)(ii)-(iii), and (b)(1)(B)(ii)-(iii); *see also* U.S.S.G. § 2D1.1(c), note (A).

Prior to sentencing, Mr. Hightower filed a motion for downward departure, on a similar due process theory, that he should not be sentenced under the guidelines for crack offenses. *See* App. vol. 1, Doc. 168. Mr. Hightower argued that a recent Sentencing Commission Report, which has not led to changes in the sentencing guidelines for crack offenses, supports his contention that because a substantial majority of those convicted of crack offenses are African American, the guidelines for crack crime sentences violate due process and equal protection principles. *See id.*, exhibits B, C. He argues that because the sentences are

harsher for crack offenses, the disparate sentencing liability between crack and powder cocaine offenses violates his rights to due process and equal protection.

We note that recommendations made by the Sentencing Commission to Congress are not the law, and that Mr. Hightower was properly sentenced according to the applicable statutory and sentencing guidelines. Mr. Hightower makes the argument that these higher sentences for crack offenses are racially biased and unfair, but cites to no persuasive authority to support a finding that they violate his rights to due process or equal protection. This Court has repeatedly held that the enhanced penalty scheme for offenses involving crack versus powder cocaine violates neither due process nor equal protection principles, and specifically that such possible disparate impact does not evidence intentional discrimination. *United States v. Williamson*, 53 F.3d 1500, 1530 (10th Cir. 1995). As such, the district court did not err in finding that Mr. Hightower's due process rights were not violated when he was convicted and sentenced for crack distribution.

3.   The District Court's Conclusion Not to Downwardly Depart Based on Sentencing Commission Report and Recommendation

Mr. Hightower argues that due to the existence of the Report described above, the district court erred in finding that it did not have the authority to consider that report as a mitigating factor justifying a downward departure for sentencing pursuant to U.S.S.G. §5K2.0. This Court reviews de novo a district

court's conclusion that it is without authority to grant a downward departure. *United States v. Maples*, 95 F.3d 35, 37 (10th Cir. 1996). In *Maples*, we held that such considerations are not proper in sentencing because such reports are not law. *Id.* "In declining to depart downward based upon a proposed amendment to the Sentencing Guidelines, the district court acted properly as it was bound by statute to apply the existing Guidelines, policy statements and official commentary." *Id.* On the specific issue of mitigating factors under the Guidelines, the *Maples* court also held that "the expansive issue of appropriate sentencing levels for crack offenses is not the sort of discrete, individual and case-specific mitigating circumstance justifying downward departure under 18 U.S.C. § 3553(b)." *Id.* at 37-8. The district court therefore did not err in finding that it did not have the authority to downwardly depart based on the Sentencing Commission's Report to Congress.

4.     Sentencing Entrapment

Mr. Hightower finally argues that the government engaged in "sentencing entrapment" because the undercover agents who bought drugs from him asked specifically for crack with full knowledge that he could also furnish other drugs which carry less sentencing liability. The district court denied departure on this ground, finding both that Mr. Hightower was predisposed to deal in crack, and

that the government's conduct in specifying that its informants purchase crack was not outrageous. *See* App. Vol. 12 at 198-99.[1]

Sentencing entrapment claims are only entertained when there is the probability that the government acted in an outrageous manner. *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996). Certain drug quantities may be excluded from sentencing calculation if the defendant shows that the continuing investigation which obtains higher and higher quantities is done in a manner that "is so shocking, outrageous and intolerable that it offends 'the universal sense of justice.'" *Id.* (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973). Putting aside those things that might offend a "universal sense of justice," here the district court found that three significant purchases of crack did not amount to outrageous conduct by government agents. We agree that, under such circumstances, Mr. Hightower has not made a showing of sentencing entrapment and affirm the decision of the district court not to depart downward.

---

[1]The Government argues that because the record indicates that the district court knew that it could have departed on a finding of sentencing entrapment, and chose not to do so, this Court does not have the jurisdiction to review that exercise of discretion. Ordinarily this is, indeed, the case. *See, e.g., United States v. Banta*, 127 F.3d 982, 983 n.1 (10th Cir. 1997). Appellate review of a district court's denial of a requested departure is authorized only where the district court rules "that it does not have any authority to depart from the sentencing guidelines range for the entire class of circumstances proffered by the defendant." *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir. 1998). Our precedents indicate, however, that we have jurisdiction where, as here, an appellant asserts that the government has illegally manipulated the sentencing guidelines. *See Lacey*, 86 F.3d at 962 n.2.

## Conclusion

For the reasons detailed above, we AFFIRM the conviction and sentence of

Mr. Hightower and DISMISS this appeal.

Entered for the Court,

Michael W. McConnell
Circuit Judge